WOLF, J.,
Dissenting.
The majority relies on our court’s recent decision in M.H. v. State, 69 So.3d 325, (Fla. 1st DCA 2011), to reverse, stating the trial court failed to “place [its] knowledge on record” of the different programs offered by the varying detention levels. I disagree with the application of M.H. and would affirm on the facts of the underlying case. In the alternative, I would certify a question of great public importance as to whether the failure to follow the dictates of E.A.R. v. State, 4 So.3d 614 (Fla.2009), can ever constitute harmless error.
In M.H. this court stated:
As noted in E.A.R., in deviating, a trial court must articulate “an understanding of the respective characteristics of the opposing restrictiveness levels including (but not limited to) ... the divergent treatment programs and services available to the juvenile at these levels.” E.A.R., 4 So.3d at 638 (emphasis added). Here, the trial court implied that the moderate-risk facility would offer the child a “structured” drug program. However, nothing in section 985.03(44)(c), Florida Statutes, states that all moderate-risk facilities have drug treatment programs as suggested by the trial court.
M.H., 69 So.3d 325, 328. As evidenced by the foregoing analysis, the commitment deviation in M.H. was predicated on the trial court’s belief that appellant needed a “structured” drug program; however, nothing in the definition of a moderate-risk facility guaranteed the existence of such a program. Id. Unlike M.H., the trial court’s main concerns in deviating in the underlying case were the safety of the public, as well as appellant’s safety. Specifically, the court noted:
the combination of you had the means to obtain a handgun and you felt the need to obtain a handgun indicates that you have been engaging in very, very, very dangerous conduct ... my job is to try to decide ... what’s in your best interest, as well as the best interest of society. I just keep coming back to the conclusion that you pose a severe danger to yourself ... I don’t see any rational *178 argument that supports anything less than a maximum risk.
The facts of the underlying case clearly differ from those in M.H., where the juvenile was not found to pose a threat to society or himself. In fact, in M.H., we specifically noted, “The underlying offenses for sale and possession of marijuana are not violent crimes which dictate a heightened need to protect the public, but even if they were, the trial court never stated appellant posed any threat to society.” M.H., 69 So.3d 325, 328. Section 985.03(45)(e), Florida Statutes (2010), defines a “Maximum-risk residential” facility as:
Programs or program models at this commitment level include juvenile correctional facilities and juvenile prisons. The programs are long-term residential and do not allow youth to have access to the community. Facilities are maximum-custody, hardware-secure with perimeter security fencing and locking doors- Facilities shall provide 24-hour awake supervision, custody, care, and treatment of residents. The staff at a facility at this commitment level may seclude a child who is a physical threat to himself or herself or others. Mechanical restraint may also be used when necessary.... Placement in a program at this level is prompted by a demonstrated need to protect the public.
(Emphasis added).† Short of reading this definition on record and the definition contained in the administrative code on record, the trial court in the underlying case demonstrated its understanding that the maximum-risk facility was the least restrictive option that would best suit the protection of the public and further prevent appellant from harming himself. Reading the statute and the code into the record would serve no further purpose. As such, I would affirm.
However, I further write to note that both the instant case and M.H. are two recent reversals from this court based on the stringent requirements and bright-line rule outlined by the Florida Supreme Court in E.A.R. v. State, 4 So.3d 614 (Fla.2009). These cases share the following characteristics:
1. The disposition and commitment level imposed by the trial court were entirely reasonable based on the circumstances of the individual case.
2. The juvenile being sentenced had previously served at the commitment level recommended by Department of Juvenile Justice (DJJ) and within a short period of time, committed the same or a more serious offense.
3. The predisposition report issued by DJJ was inadequate, in one case containing factual inaccuracies and in both cases being totally devoid of any analysis of why the recommended commitment was (1) best suited to meet the rehabilitative needs of the child or (2) best guaran *179 teed to ensure the safety of the general public.
4. Although the court failed specifically to articulate its understanding of the various restrictiveness levels, the disposition imposed was only one level above the one previously imposed, which had failed to deter additional criminal activities by the juvenile.
Where all of the circumstances outlined above exist, the trial court’s failure to follow E.A.R. should constitute harmless error. The structure and reasoning of E.A.R., however, appear to contemplate that harmless error would be inapplicable. I believe the Supreme Court should specifically address this issue.
I would, therefore, certify to the Florida Supreme Court the following question as one being of great public importance:
WHETHER A TRIAL COURT’S FAILURE TO FOLLOW THE DICTATES OF E.A.R. V. STATE, 4 So.3d 614 (Fla.2009), CAN EVER CONSTITUTE HARMLESS ERROR?

 While the majority states there is no discerna-ble difference between the security provided at high-risk and maximum-risk facilities, there are several key differences. Section 985.03(45) requires that high-risk facilities authorize a 72-hour community leave in certain circumstances, although such is not the case at a maximum-risk facility. The statute also states that placement at the maximum-risk level is prompted by a demonstrated need to protect the public. § 985.03(45), Fla. Stat. No such language is utilized in defining a high-risk facility. Further, pursuant to Florida Administrative Code Rule 63E-7.013 (2011), high-risk facilities are not required to provide (1) a camera surveillance system; (2) a secure sally port; (3) a secure pedestrian gate; or (4) electronic search equipment, while they are required at maximum-risk facilities.